430

ORDINANCE TO REZONE, IN THE MATTER OF.

Common Pleas Court, Marion County.

No. 35747.   Decided March 1, 1962.

432

*Messrs. Wiedemann & Wiedemann, Mr. Frank Wiedemann* of counsel, for appellant.
*Mr. Eugene A. Yazell,* for appellee.

(SANDERS, J., of Union County, sitting by designation in Marion County.)

SANDERS, J. This cause comes on an appeal under the administrative procedure act from a final order, adjudication and decision of the City Council of the City of Marion, Ohio, a Municipal Corporation made and entered on the 11th day of September, 1961 in which it was held and decided that the appellant Russell D. Luke was not entitled to have rezoned from "A" residential to "B" commercial lots number 1703, and 1704 in True's Fourth Addition to the City of Marion, Ohio and was denied the useage of said property for a gasoline and oil service station.

The same is submitted to the Court on the transcript of the proceedings of the council of the City of Marion, Ohio; and on the "petition on appeal" of the Appellant and the answer of the Appellee and the Appellant having filed a motion, supported by an affidavit under Section 2506.03, Revised Code, to produce additional evidence on the hearing on appeal which said motion was sustained by the Court; on a stipulation and agreed statement of facts. A copy of which is attached to this decision. Said cause was also submitted on Appellants Exhibit I which is a plat indicating the location of the proposed filling station and appellants exhibit 2 which is a rough plat of the property in question and adjacent real estate and Appellants Exhibit 3 which is a copy of Ordinance number 6303 of the City of Marion.

The Court finds that the Appellate procedure is correct and

in conformity to law and that all necessary parties are properly before the Court.

The Court further finds that under and by virtue of the terms of Section 2721.12, Revised Code, summons and a copy of the petition on appeal were served upon Mark McElroy, Attorney General of Ohio and that he elected not to participate in said action. The Court further finds that Mark McElroy as Attorney General of Ohio is not a necessary party to this action as this is not an action for "Declaratory Judgment."

The Court further finds that Russell D. Luke is the owner of the following described real estate.

Situated in the County of Marion and in the State of Ohio and in the City of Marion and bounded and described as follows:

Known as being Lots Numbers Seventeen Hundred and Three (1703) and Seventeen Hundred and Four (1704) in True's Fourth Addition to the City of Marion, Ohio.

Said property is further described as the northeast corner of East Center Street and Chicago Avenue, Marion, Ohio.

That the value of said real estate for residential purposes is $2,000.00 to $3,000.00 and that the value of said real estate for commercial purposes i. e., a gasoline service station is $28,500.00 and that the Phillips Petroleum Company has an enforcible option for the purchase thereof at that sum in the event said real estate is rezoned from "A" residential to "B" commercial.

The Court further finds that heretofore the City of Marion, Ohio, adopted an ordinance providing for planning and zoning the real estate located within the said City of Marion, Ohio, said ordinance being ordinances numbered 3156, 5172, 6303, and codified in Chapter 21 on pages 199 and 209 of the Marion City Code, and being Code Sections 21.1 to 21.17 inclusive; that Section 21.6 thereof defines a residential district in which only property used for residential purposes may be located; and that same are in effect as duly passed ordinances of said City;

That the real estate heretofore described, located in the City of Marion corporate limits, was heretofore, on or about November 28, 1930, classified under said zoning ordinance of

the City of Marion, Ohio, as being in a residential zone and same is shown on the use map in connection with said zoning ordinance, as being in a residential zone of said City of Marion, Ohio;

That on February 10, 1958, the Council of the City of Marion, Ohio, duly passed Ordinance No. 6303 of the records of Ordinances of the City of Marion, Ohio, and adopted same and said ordinance provides for the allowance of the erection of gasoline and oil filling stations and service stations in the commercial district or zone of said City, with the approval of the Planning Commission, administering said ordinance and with the approval of Council of the City;

On July 24, 1961, an ordinance was presented to the Council of the City of Marion, Ohio, by appellant, proposing to rezone the northeast corner of East Center Street and Chicago Avenue, same being the real estate of the appellant, heretofore described, from ''A'' Residential to ''B'' Commercial and for permission to use said corner for a gasoline and oil service station, and same was by resolution of the Council of the City of Marion, Ohio, referred to the Planning Commission of the City of Marion, Ohio, directed to present said Commission's findings and report on said rezoning to said Council not later than September 11, 1961, and that after notice to interested parties according to law, the said Ordinance proposing to rezone should be heard by the said Council on September 11, 1961; that thereafter said Ordinance to rezone and permit the use of said real estate for a gasoline filling station was heard by the Planning Commission of the City of Marion, Ohio, on August 7, 1961, after proper notices to all interested parties, and publication according to law, and said Planning Commission, did on August 7, 1961, have a hearing on said matter and did review same and did approve the application to rezone said real estate and permit its use for gasoline and oil service station, and did so report its approval of said application to rezone same to said Council on the 11th day of September, 1961.

That thereafter on said date of September 11, 1961, after a hearing on same, said Council did disapprove, refuse and reject said application to rezone and permit said real estate to be used as a gasoline and oil service station.

That Alta Sheehe is the Clerk of the City of Marion, Ohio,

whose duty it is to issue permits for the construction of property in said city, including gasoline and oil filling stations.

The Court further finds that East Center Street in the City of Marion, Ohio, is a busy, heavily traveled, four lane main thoroughfare, that approximately 7,500 automobiles travel past the location of appellant's real estate each 24 hours; that from the Commercial Section of the City of Marion, Ohio, eastwardly on East Center Street, on both sides of the street, up to and past the location of appellant's real estate, are located many places of business, including gasoline and oil filling stations; that southwest of said real estate of appellant, about 275 feet from same, is located a large super market and parking lot, supplying hundreds of people daily with groceries and meats; that on the corner of East Center Street and Forest Lawn Boulevard, across the street from appellant's real estate, approximately 125 feet from same, is a branch bank and parking lot of the Fahey Banking Company, Marion, Ohio; that approximately 190 feet west from appellant's real estate on the north side of East Center Street is located a large gasoline and oil filling station operated by Shell Oil Company which has been in operation 5 years; that extending intermittently from said appellant's real estate, westwardly to the business section of the City of Marion, Ohio, are numerous places of business that have been built since the zoning ordinances of the City of Marion, Ohio, became effective with the approval of the Council of the City of Marion, Ohio; that the Shell Oil Station located 190 feet from appellant's real estate was built with the consent of the Council of the City of Marion, Ohio, since the zoning ordinances of the City of Marion, Ohio, became effective; that the branch bank of the Fahey Banking Company of Marion, Ohio, located across the street from appellant's real estate was built with the consent of the Council of the City of Marion, Ohio, since said zoning regulations of the City of Marion, Ohio became effective.

* The Court further finds that the filling station to be constructed will meet all requirements of the State of Ohio and the City of Marion and will be approved by the Department of Industrial Relations to the State of Ohio; will not constitute a nuisance per se, and the erection thereof would not depreciate the neighborhood real estate value.

This poses the question as to whether or not said zoning ordinance Section 21.6 of the Marion City Code and ordinances of the City of Marion and Section 21.7 of the Marion City Code, Planning and Zoning Ordinances as amended by ordinance 6303 and all related zoning ordinances as they apply to Appellant's property are arbitrary and unreasonable and have no relation to the public health, good, safety or public morals and whether the action of the City Council of Marion, Ohio in refusing to re-zone Appellant's property from ''A'' residential to ''B'' commercial and to permit the construction on said property of a gasoline and oil service station was arbitrary and unreasonable and constituted an abuse of discretion and whether said action constitutes confiscation of said property without due process of law?

A zoning ordinance is in derogation of the common law right to use of private property, enacted in the exercise of municipal police power. The courts in the beginning were reluctant to concede the existence of the power but, since recognition by the Supreme Court of the United States in *Euclid* v. *Ambler Realty Co.*, 272 U. S., 365, 47 S. Ct., 114, 71 L. Ed., 303, 54 A. L. R., 1016 (1926), the scope of the power has been greatly extended. Ohio Municipalities have two alternatives, deriving their power from Art. 18, Sec. 3, Ohio Constitution, and Sections 713.01 to 713.37, Revised Code. Regulation of bulk, area, and use of buildings is upheld under the former, while the latter prescribes statutory methods for the creation of planning commissions. Apparently the statutory method is not exclusive, and the exercise of local police power is not in conflict with general state laws.

It is a fundamental rule that rights of private property cannot be taken away or interfered with without due process of law. The right to use private property is, however, subservient to the general welfare, and before a court will declare a zoning ordinance invalid, it must clearly appear that it bears no substantial relation to public health, safety, morals, or general welfare. Thus the power to zone must not be exercised in an arbitrary, unreasonable, or unjustifiable manner, and the ordinance must have a reasonable and substantial relation to its purpose. *Euclid* v. *Ambler Realty Co., supra; Nestow* v.

*Cambridge*, 277 U. S., 183, 48 S. Ct., 447, 72 L. Ed., 842 (1928). See 4 O. S. U. Law Journal, 352.

If the provisions of the zoning ordinance in the case at bar, when applied to the premises described in the petition, are unreasonable or arbitrary, having no substantial relationship to the public health, morals or safety, the ordinance as to that particular property must fall.

The constitutionality of an ordinance *as to its substance* is to be determined as of the time of the enactment of the ordinance. Such ordinance, *in its application*, is to be determined by the particular state of facts existing at the time the constitutionality of the ordinance is in question. "A legislative act may be unconstitutional upon its face, or may be valid upon its face but unconstitutional because of its operative effect upon a particular state of facts."

*Belden, Appellant,* v. *The Union Central Life Insurance Co., Appellee; Koplin, Appellant,* v. *The Ohio National Life Insurance Company, Appellee,* 143 Ohio St., 329.

Syllabus 4 of said case is as follows:

"A legislative act may be unconstitutional upon its face, or it may be valid upon its face but unconstitutional because of its operative effect upon a particular state of facts."

The Appellant might be limited to a less profitable use of his property if the ordinance here were upheld. The evidence discloses and it is admitted that the property is only worth between $2,000 or $3,000 for residential purposes and is worth $28,500.00 as a location for a filling station. A considerable decrease in the value of property has seemingly not troubled the Courts although it is indicated as a feature to be considered. *Geneva Inv. Co.* v. *St. Louis,* 87 Fed. (2d), 83, Syllabus 10 of the above mentioned case reads as follows:

"In determining the validity of amended zoning ordinance, loss caused by depreciation of value of complainant's land transferred from commercial to residential district, though proper for court's consideration, is not controlling, since individual must undergo loss due to proper exercise of police power."

It is conceded that under our system of government often a citizen must suffer pecuniary loss for the good of the common weal. However, it appears to the Court that to compel one to accept a 90% loss when it is admitted that the construction he

contemplates will not "depreciate the neighborhood real estate value" (*see par. 17 agreed statement of facts*) is unreasonable and constitutes a confiscation.

Certainly it cannot be seriously contended that the real estate is now adaptable to residential construction. The only persons who now desire to "live by the side of the road where the race of the men go by" are the operators of Drive-In-Restaurants, Super Markets and Filling Stations.

It is also admitted and the evidence discloses that since the time the lots in question were "zoned residential" there has been a tremendous change in the character of East Center Street. It is no longer a quiet tree shaded street serving a small community. It has now become a main artery of commerce and transportation, serving not only the growing City of Marion but much of Central Ohio. It is now a four lane highway over which at least 7500 vehicles pass every 24 hours and the evidence discloses that in the near future the City of Marion will increase the width of East Center Street to fifty-six feet and provide two twelve foot lanes thereon with a median in between, which will further increase the flow of traffic.

In this case we are not dealing with a situation where an owner seeks to have his property rezoned from residential to commercial in a secluded and quiet section of a town. It is beyond the power of any zoning ordinance to turn this area for some distance, either East or West on Center Street into a secluded and desirable residential district. The facts of modern day traffic prevent that. It is plain that an ordinance which permanently so restricts the use of property that it cannot be used for any reasonable purpose goes beyond regulation, and must be recognized as a taking of the property.

It is the duty of the "City Fathers" to keep abreast of the times and to exert the foresight and *courage* which would require them to rezone the property on this thoroughfare from residential to commercial.

The police power cannot be invoked for purely asthetic purposes or to promote private comfort or private welfare.

The case of *Henle* v. *City of Euclid*, 97 Ohio App., 258, 264, is directly in point.

From the above case we quote:

"We are, therefore, confronted with just one question—under all the circumstances and facts of this case, is the zoning ordinance of the City of Euclid, as it applies to plaintiff's property, a constitutional exercise of the police power of the city of Euclid."

"As a community grows, population shifts, neighborhoods change and the considerations which once were conclusive as to the right to restrict property to a particular use under a zoning plan, may, be the passing of time, be totally destructive of the owner's rights in the property. This rule was recognized in the case of *Village of Euclid* v. *Ambler Realty Co.*, 272 U. S., 365, 71 L. Ed., 303, 47 S. Ct., 114, 54 A. L. R., 1016, *where the Supreme Court of the United States said*:

"It is true that when, if ever, the provisions set forth in the ordinance in tedious and minute detail, come to be concretely applied to particular conditions, or to be considered in connection with specific complaints, some of them, or even many of them, may be found to be clearly arbitrary and unreasonable,"

See also: *Sun Oil Co.* v. *City of Euclid*, 164 Ohio St., 265, *State, ex rel. Euverard* v. *Miller*, 98 Ohio App., 283.

"In the case at bar, the trial court found correctly from credible evidence that since the time when the lots in question 'were zoned residential' there has been a great industrial growth in the immediate and adjacent properties to the east and to the west, and that there has been such industrial growth on Brook Park Road that these lots should no longer be classed as residential land, and that they are suitable for the erection of a gasoline service station."

*State, ex rel.* v. *Village of Brook Park*, 107 Ohio App., 329.

"In our opinion, this case affords a classic example calling for judicial relief where the village authorities are unwilling to grant such relief."

One of the most disturbing factors of this case is the question of whether or not the Council of the City of Marion was attempting to regulate competition by its action in refusing to rezone the property in question. It is admitted and the evidence discloses that (*agreed statement of facts par. 8:*)

"There are numerous places of business that have been built since the zoning ordinances of the City of Marion, Ohio

became effective with the approval of the Council of the City of Marion, Ohio; that the Shell Oil Station located 190 feet from appellant's real estate was built with the consent of the Council of the City of Marion, Ohio, since the zoning ordinances of the City of Marion, Ohio, became effective; that the branch bank of the Fahey Banking Company of Marion, Ohio located across the street from appellant's real estate was built with the consent of the Council of the City of Marion, Ohio since the zoning regulations of the City of Marion, Ohio became effective.''

A zoning ordinance cannot be used to control competition. Zoning should as nearly as is reasonably possible deal equally with like property or as to property similarly situated.

See—*State, ex rel. Rosenthal,* v. *Bedford,* 74 Ohio Law Abs., 425.

It is the opinion and decision of this Court that: Zoning Ordinance Section 21.6 of the Marion City Code and ordinances of the City of Marion, including Section 21.7 and the Planning and Zoning Ordinances as amended by ordinance 6303 and all related zoning ordinances as they apply to appellant's property, are arbitrary and unreasonable and have no relation to the public health, good, safety or public morals; and that the action of the City Council of Marion, Ohio in refusing to rezone appellant's property from ''A'' residential to ''B'' commercial and to permit the construction on said property of a gasoline and oil service station was arbitrary and unreasonable and constituted an abuse of discretion, and constitutes confiscation of said property without due process of law. Therefore said ordinances and acts of the Council of the City of Marion are an unconstitutional exercise of the police power which deprives the appellant of his property without due process of law.

The order, adjudication and decision of the City Council of the City of Marion, Ohio, is reversed.

A mandate shall be issued to the City Council of the City of Marion, Ohio and to Alta Sheehe, as Clerk of the City of Marion, Ohio to carry out the decision of this Court.

Exceptions for Appellee.